ANDREW P. THOMAS
MARICOPA COUNTY ATTORNEY

Peter S. Spaw
Deputy County Attorney
Bar ID No. 005336
Firm ID No. 00032000
spawp@mcao.maricopa.gov
301 West Jefferson, Suite 800
Phoenix, AZ  85003
Telephone:  (602) 506-2271
Attorneys for Plaintiff/Counter-Defendants

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| STATE OF ARIZONA, *ex rel.* ANDREW P. THOMAS, | CV 09-2576-PHX-MHM |
| Plaintiff, | **STATE'S MOTION TO REMAND** |
| vs. | |
| SCOTTSDALE ART FACTORY, L.L.C., an Arizona limited liability company, Defendant. | |
| SCOTTSDALE ART FACTORY, L.L.C., an Arizona limited liability company. Counterclaimants, | |
| vs. | |
| STATE OF ARIZONA, ex rel. ANDREW P. THOMAS, Counter-defendants, | |

-1-

1        COMES NOW THE STATE, through counsel undersigned, pursuant to 28

2   U.S.C. § 1441(c), and moves this Court for an order remanding this matter to the

3   Maricopa County Superior Court on the grounds that the above-entitled action

4   has not at any time involved a claim or right arising under the Constitution,

5   treaties, or laws of the United States, contrary to those allegations made in the

6   Notice of Removal filed in behalf of Defendant Scottsdale Art Factory, L.L.C.

7   Additionally, there is no other basis for this court's jurisdiction since this cause of

8   action arises solely under state law, namely the Legal Arizona Workers Act,

9

10   A.R.S. § 23-211 *et. seq.*

11        Pursuant to Rule 7.2(a), Rules of Practice, a memorandum of points and

12   authorities is attached in support of this motion.

13        Respectfully submitted this 30th day of December, 2009.

14                             ANDREW P. THOMAS
                               MARICOPA COUNTY ATTORNEY

15

16

17                             By:  */s/ Peter S. Spaw*
                               Peter S. Spaw
                               Deputy County Attorney

18                                  301 West Jefferson Ste 800
                               Phoenix, Arizona 85003

19                                  Attorney for the State

20

21

22

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.   OVERVIEW

3

4

    The Notice of Removal filed in behalf of Scottsdale Art Factory, L.L.C. ("Defendant") seeks removal based exclusively on federal question jurisdiction.[1]

5

6

Although a variety of "questions of federal law" are alleged to be raised by the State's Complaint, Defendant identifies as the "dispositive question" raised by the

7

8

Complaint, "a proper determination of … immigration status … which necessarily involves and is based upon an issue of Federal law."[2]

9

10

    Defendant then directs this Court's attention to a United States Supreme Court case[3] as the case that should guide this Court's determination as to

11

12

whether Defendant has sustained the burden of showing that removal is proper[4]

13

and federal jurisdiction is absolutely clear.[5]  For those reasons stated

14

15

---

[1] Notice of Removal, paragraph 3.

16

[2] Notice of Removal, paragraph 5.

17

[3] *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, 545 U.S. 308 (2005).  This case reflects a decision by the Sixth Circuit to decline to remand a case to state court based upon a finding that the national interest in providing a federal forum for federal tax litigation was sufficiently substantial to support the exercise of federal-question jurisdiction ("a federal forum for federal tax litigation is sufficiently substantial to support the exercise of federal-question jurisdiction" *Grable & Sons*, 545 U.S. at 310).  As more fully discussed in this motion to remand, the case at bar presents no "litigated federal question" (*See*, Section II(A)).  Additionally, the case at bar concerns a state's exercise of licensing sanctions which has been authorized by Congress; which has been recognized by this same federal district court as validly exercised by the State of Arizona; and which has been heavily populated by state action across the nation.  (*See*, Section II(B)).  Amazingly, the *Grable* analysis invited by Defendants strongly favors the requested remand.

18

19

20

[4] The burden is on the party seeking removal to show that removal is proper.  *Holcomb v. Bingham Toyota*, 871 F.2d 109 (9th Cir. 1989).

21

[5] Remand is strongly favored where federal jurisdiction is not absolutely clear.  *Boggs v. Lewis*, 863 F.2d 662 (9th Cir. 1988).

22

below, including in large part the guidance provided by the decision adopted by Defendant as guiding, this matter should be remanded to the Maricopa County Superior Court.  First, Defendant cannot establish the existence of a contested federal issue – what Defendant's case refers to as "the federal door key (always required)".  Second, even if this Court were to find the existence of a substantial federal contested issue, the decision adopted by Defendant as guiding clearly warrants refusal to grant Defendant this federal forum – what the case refers to as "a missing welcome mat, required in the circumstances."

## II.     A CONTESTED FEDERAL ISSUE DOES NOT APPEAR IN THE COMPLAINT

### A.     A "determination of immigration status" is not a "contested federal issue" under the Legal Arizona Workers Act.

### 1.     The Immigration Reform and Control Act ["IRCA"] expressly authorized State-imposed licensing sanctions.

This very federal court, in the case of *Arizona Contractors Association, Inc. v. Candelaria*,[6] has recently ruled that State-imposed licensing sanctions have not been preempted by federal law.

---

[6] 534 F.Supp.2d 1036 (D.Ariz. 2008).  This opinion was the result of actions challenging the validity of Arizona's recently enacted Legal Arizona Workers Act ("the Act") which authorized state courts to revoke or suspend business licenses of employers that employed unauthorized aliens. Judge Neil Wake upheld the constitutionality of the Act, and in doing so, provided an extensive and comprehensive analysis of the Act.  Judge Wake's careful analysis of the Act has already addressed the substance of all issues raised by Defendant in seeking a federal forum.

1   The court specifically noted that when IRCA was enacted, Congress, using "plain

2   language," authorized State licensing sanctions.  Citing directly to 8 U.S.C. §

3   1324a(h)(2)[7] the Court concluded that "a licensing or similar law … is expressly

4   authorized by IRCA's savings clause." *Candelaria*, 534 F.2d at 1045-46.

5   **2.      The Legal Arizona Workers Act ["the Act"] is a "licensing or similar**

6   **law" authorized by the federal "savings clause."**

7       This federal court, itself now using "plain language," has specifically ruled

8   that "the Act is a 'licensing law' because it sets out criteria and a process to

9   suspend or revoke a permission to do business in the State. It therefore falls

10  within the plain meaning of the IRCA's savings clause." *Candelaria*, 534 F.2d at

11  1946.

12  **3. As a state "licensing law," the Act does not make "determination of**

13  **immigration status" any kind of contested issue – much less a**

14  **federal contested issue[8].**

15      This federal court has specifically recognized that a "determination of

16  immigration status" is not a contested issue raised by the filing of a

---

[7] "The provisions of this section [8 U.S.C. § 1324a] preempt any State or local law imposing civil or criminal sanctions *[other than through licensing and similar laws]* upon those who employ, or recruit or refer for a fee for employment, unauthorized aliens [Emphasis by the Court]."

[8] It can be argued that this state action does not even constitute a "civil action" for removal purposes. Generally, actions brought for the vindication of private rights are classified as civil, while those brought to vindicate public rights through obtaining judgments involving sanctions are non-civil and non-removable. *See, Racine County v. Deligiannis*, 380 F.Supp 1406 (E.D. Wis. 1974).

-5-

1  complaint pursuant to the Act.  This federal court specifically noted that:

2      "[T]he Act does not determine 'who should or should not be admitted into

3      the country, and the conditions under which a legal entrant may remain.'  It

4      'adopt[s] federal standards in imposing … sanctions against state

5      employers who knowingly employ aliens who have no federal right to

6      employment within the country. [citation omitted]. 'The State may borrow

7      the federal classification' provided that the classification is reasonably

8      adapted to 'the purpose for which the state desires to use it.'" *Candelaria*,

9      534 F.2d at 1051.

10         Defendant's reference to that portion of the State's Complaint that

11  evidences the State's "borrowed federal classification" does not meet

12  Defendant's burden of establishing an "absolutely clear" showing of a contested

13  federal issue.  As this federal court has noted, the trial judge presiding over this

14  licensing litigation will not be making any determination as to "who should or

15  should not be admitted into the country."  Rather:

16      "The Act requires State Investigators to request a federal determination of

17      a person's immigration status. When USCIS[9] determines that an employee

18      is authorized to work, State investigators and courts must accept that

---

[9] United States Citizenship and Immigration Services

1    determination and the employer cannot be liable." *Candelaria,* 534 F.2d at

2    1054.

3         Litigation over the "fact" of the federal determination is not litigation over

4    the "substance" of the federal determination. Defendant cannot demonstrate how

5    a potential "contested issue" as to the admissibility of evidence necessary to lay

6    the foundation for the admission of the federal determination rises to a "contested

7    federal issue."  This federal court, in specific reference to the Act, has previously

8    noted that it does not:

9

10        "The State has the burden to prove that the employer knowingly or

11        intentionally employed an unauthorized alien. The Superior Court has full

12        evidence-talking, fact-finding, and discretionary authority on all issues of

13        liability; it simply cannot find an employee unauthorized absent a federal

14        determination to that effect...." *Candelaria,* 534 F.2d at 1058.

15        However, nothing speaks more powerfully to the "non-issue" that the

16   "federal determination" is to a litigated issue under the Act than the provision that

17   allows the trial court, at the trial, to "take judicial notice of the federal

18   government's determination."  A.R.S § 23-212(H); A.R.S. § 23-212.01(H).[10]

19

20

21   _____

[10] Section 212 addresses the trial on the issue of whether the employment was "knowing" and section 212.01 addresses the issue of whether the employment was "intentional."  Otherwise, the language of the sections are identical and provide in relevant part: "The court may take judicial notice of the federal government's determination and may request the federal government to provide automated or testimonial verification pursuant to 8 United States Code § 1373(c)."

22

-7-

**B.     A "determination of immigration status," even if presenting a "contested federal issue" under the Legal Arizona Workers Act, is not a "sufficiently substantial contested federal issue" to warrant the exercise of federal jurisdiction.**

**1.     Exercise of federal jurisdiction is guided by as assessment of the destructive effects of assumed jurisdiction.**

Defendant concedes, through the singular reliance on *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*[11], that:

> "[E]ven when the state action discloses a contested and substantial federal question ... the presence of a disputed federal issue and the ostensible importance of a federal forum are *never* necessarily dispositive; *there must always be an assessment of any disruptive portent in exercising federal jurisdiction* [emphasis added]" *Grable & Sons,* 545 U.S. at 313-314.

**2.     Exercise of federal jurisdiction in this matter would be unnecessarily disruptive of the State's recognized exercise of its police power in licensing sanctions.**

This federal court has already engaged in the balancing analysis

---

[11] 545 U.S. 308 (2005).

-8-

1   suggested by Defendant as it relates to the Act.  First, this federal Court

2   recognized licensing sanctions as an appropriate exercise of the State's police

3   power.

4          "Congress expressly reserved to the states the police power ... to act upon

5          the business licenses of those who knowingly employ unauthorized aliens.

6          [T]hat power included the power to revoke such a license. ***Preservation of***

7          ***that state power was itself a part of Congress' careful balancing of***

8          ***policy objectives***. The structure and purpose of IRCA do not clearly

9          evidence an intent to prevent the states from independently revoking the

10         business licenses of those who knowing employ unauthorized aliens

11         [emphasis added]."  *Candelaria,* 534 F.2d at 1051.

12

13         Second, this federal court has specifically recognized the Act as an

14  appropriate use of the State's exercise of its inherent police power in this area of

15  licensing sanctions, noting that:

16         "The Act ... is a conscious attempt to address this problem[12] at the State

17         level by imposing sanctions by 'licensing and similar laws' upon those who

18         employ unauthorized aliens, ***as expressly permitted by IRCA*** [emphasis

19         added]."  *Candelaria,* 534 F.2d at 1043.

20

21  _____

22  [12] This federal court had previously identified the "problem" as a "system ... thoroughly defeated by document and
identity fraud, allowing upwards of eleven million unauthorized workers to gain employment in the United States labor
force, with the number increasing at about a half a million a year."  *Candelaria,* 534 F.2d at 1043.

– 9 –

1    Assuming for a moment that the Complaint's reference to a "federal

2    determination of immigration status" presents a "contested federal issue," the

3    exercise of federal jurisdiction over litigation brought pursuant to the Act would

4    improperly intrude into an area this federal court has already recognized as

5    properly, and fully, manned by respective states.

6
         "The federal government first created sanction for employers of
7
         unauthorized aliens in the Immigration Reform and Control Act of 1986
8
         ("IRCA") ... . States at that time had authority to enact and enforce
9
         sanctions against employers of unauthorized aliens. [citation omitted].
10
         Indeed, at least twelve states had employer sanctions statutes that
11
         proscribed 'knowing' employment of unauthorized aliens." *Candelaria,* 534
12
         F.2d at 1041.[13]
13

14   **3.    Exercise of federal jurisdiction in this matter would be disruptive of**

15   **federal court efficiency.**

16    Additionally, it is the Act's recognition that a "determination of immigration

17   status" is appropriately done at the federal level that satisfies preemption

18   concerns as they relate to the congressionally authorized state licensing

19   sanctions.

20

21

22   ―――――――――――
[13] The court supported this with a citation to the U.S. Immigration Policy and the National Interest, Staff Report of the Select Commission on Immigration and Refugee Policy 565 (1981).

1   To recognize a complaint's reference to that "federal determination" as a trigger

2   of federal jurisdiction ensures a flooding of federal court rooms with state

3   licensing sanction litigation.  Defendant's attempt at removal suffers from what

4   Defendant's guiding case refers to as "a missing federal door key" -- the lack of

5   any contested federal issue.  But as the Defendant's reference to this case

6   correctly notes, Defendant's removal efforts should suffer as well from "a missing

7   welcome mat":

8

9       "The Court saw the missing cause of action not as a missing federal door

10      key, always required, but as a missing welcome mat, required in the

11      circumstances, when exercising federal jurisdiction over a state ... action

12      would have attracted a horde of original filings and removal cases raising

13      other state claims with embedded federal issues. ... And that would have

14      meant a tremendous number of cases."  *Grable & Sons,* 545 U.S. at  318.

15  **C.    A determination of whether services were provided to an employer in**

16  **the capacity of an "employee" or as an "independent contractor" is**

17  **not a "contested federal issue."**

18      Defendant correctly notes that a contested issue raised by the Complaint is

19  whether an individual was providing services to an employer either as an

20  "employee" or as an "independent contractor."  It is difficult to understand any

21  good faith basis for making the argument that such a determination "aris[es]

22

-11-

1   under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

2   However, even if it could be reasonably argued that a determination of this

3   nature of employment status could only be resolved in a federal court, Defendant

4   must concede that the "welcome mat" is appropriately pulled and those matters

5   are best resolved in state court.

6   **D.    A determination of whether certain conduct was "knowing or**

7   **intentional" is not a "contested federal issue."**

8

9       This federal court has previously addressed the Act's reference to the

10  federal definition of "knowing and intentional."  The Complaint suggests no more

11  than, at some future date, the trial court will have to determine whether the State

12  met its burden of establishing an appropriate level of conduct.  There is no

13  implication of federal law because, as this federal court has previously

14  determined, "the licensing sanctions provisions of [the Act] carefully track the

15  federal employer sanctions law.  The Act does not make employers conform to a

16  stricter standard of conduct than federal law." *Candelaria*, 534 F.2d at 1053.

17  **E.    The possibility that the Defendant will eventual file a proper**

18  **counterclaim does establish a "contested federal issue."**

19      It is well established law that the federal contested issue must appear in

20  the complaint and cannot be established by the counterclaim which Defendant

21  hopes to one day get filed.  *See, Abada v. Charles Schwab & Co. Inc.,* 300 F.3d

22

-12-

1    1112, 1118-19 (9th Cir. 2002). Defendant must intend a different argument in

2    paragraph 12 of the Notice as a basis for invocation of federal jurisdiction and

3    can better clarify the argument being made in response to this motion to remand.

4    **III.    THE STATE'S MOTION TO REMAND SHOULD BE GRANTED**

5          First, Defendant cannot establish the existence of a contested federal

6    issue – what Defendant's case refers to as "the federal door key (always

7    required)". The trial judge presiding over this licensing litigation will not be

8    making any determination as to "who should or should not be admitted into the

9    country." The only litigation (assuming no judicial notice is exercised) will be over

10   the "fact" of the federal determination and not the "substance" of the federal

11   determination. Defendant cannot demonstrate how a potential "contested issue"

12   as to the admissibility of evidence necessary to lay the foundation for the

13   admission of the federal determination rises to a "contested federal issue."

14

15         Second, even if this Court were to find the existence of a federal

16   contested issue, the decision adopted by Defendant as guiding clearly warrants

17   refusal to grant Defendant this federal forum – what the case refers to as "a

18   missing welcome mat, required in the circumstances." Exercise of federal

19   jurisdiction in this matter would be unnecessarily disruptive of the State's

20   recognized exercise of its police power in licensing sanctions. Additionally,

21

22

1   exercise of federal jurisdiction in this matter would be disruptive of federal court

2   efficiency.

3          It is respectfully submitted that the State's Motion to Remand should be

4   granted.

5          RESPECTFULLY SUBMITTED this 30th day of December, 2009.

6                                      ANDREW P. THOMAS
7                                      MARICOPA COUNTY ATTORNEY

8

9                                      By:  _/s/ Peter S. Spaw_____
10                                          Peter S. Spaw
                                            Deputy County Attorney
11                                          301 West Jefferson Ste 800
                                            Phoenix, Arizona 85003
12                                          Attorney for the State

13

14

15

16

17

18

19

20

21

22

-14-

1   I hereby certify that on the 30th day of
    December, 2009, I caused the foregoing document;

2

3   STATE'S MOTION TO REMAND

4   To be filed electronically with the Clerk of
    Court through ECF; and that ECF will send

5   An e-notice of the electronic filing to the
    following ECF participants.

6

7   By:   */s/ Peter S. Spaw*

8           Peter S. Spaw

9

10

11

12

13

14

15

16

17

18

19

20

21

22